All right, we are prepared to hear argument in 194596, United States v. Collins. And Ms. Morgan, you can proceed whenever you're ready. Thank you, Your Honor. May it please the Court, Mr. Hammer. I'm Shawn Morgan of Dexone Johnson TLSC in Bridgeport, West Virginia. And I'm honored to represent the appellant, Ronald Collins, here today. Mr. Collins' appeal raises significant questions of constitutional magnitude regarding his rights under the Second Amendment. He challenges his convictions from the Southern District of West Virginia on the basis that those rights were violated by the government. His argument falls into four categories. First, he challenges the sufficiency of Count II of the indictment due to the failure of the government to allege that he knew of his prohibited status as required by Rahafe v. United States. And he seeks the vacation of Count II due to this failure. Alternatively, Mr. Collins argues that the district court erred in rejecting his as-applied and heller challenges that were raised to the indictment and that these warrant reversal of his convictions. Third, he charges that even presuming that the indictment was valid, his convictions should be reversed due to Rahafe-related errors at trial. First, that the government failed to prove beyond a reasonable doubt his knowledge of his prohibited status as required by Rahafe. And second, that the district court erroneously precluded him from offering a defense pursuant to Rahafe. That is, that he did not know of his prohibited status and therefore lacked the requisite mens rea. He likewise challenges jury instructions that were given and not given regarding the Rahafe standard. And finally, even presuming that there were not constitutional errors requiring that Count II be vacated or constitutional errors requiring that this indictment be dismissed, or that there were trial errors warranting reversal of his convictions, he argues that the sentences that were imposed upon him were procedurally and substantively unreasonable and that resentencing would be required. From a factual standpoint, this case is a unique one that caused him to question his rights under the Second Amendment. His charges in the Southern District of West Virginia allege that he made a materially false statement in connection with his application to purchase a firearm from a federal firearms licensee and that he was a prohibited person, not authorized to possess a firearm because of his status as someone who had been committed to a mental institution. However, it's Mr. Collins' position that he is not a prohibited person under 922G4, that he did not make a materially false statement regarding his prohibited status when applying for the purchase of that firearm, and that... Does the jury verdict preclude that particular challenge, the jury verdict on Count I? We would argue that it does not, Your Honor, because of the underpinning related to his Second Amendment challenges to the indictment. With respect to that... When did you object to the indictment? There was not an objection. I did not represent him at trial. I do acknowledge the government's position that the objection to the indictment was not raised below. So, therefore, it would be a plain error analysis for this court under Alano with respect to his first argument. Isn't that sort of an ultimate no-no, not to raise an objection to the indictment until appeal? You're certainly supposed to raise it pre-trial, but this wasn't even raised post-verdict. We're just up here on appeal. That's correct, Your Honor. And I raised the error when I recognized it when I was appointed on appeal, but I do acknowledge that under Alano that this court can take notice of it only if finding that the error was obvious under the law at the time of review. How can it be a plain error if the indictment tracked the language of the statute? Well, because the indictment was returned pre-Rehafe, and Rehafe requires that the government prove that Mr. Collins knew of his prohibited status. I think even the government would concede that it now charges indictments including that Rehafe language, and that was not something that occurred in this case. Well, all your Rehafe arguments are plain error arguments, right? Yes, ma'am. With respect to the constitutional challenges under Heller, if the court were to presume that there was not plain error, that it would recognize in dismissing count to outright for the failure to allege the Rehafe element as required. I think the most significant issue facing the court today relates to the district court's rejection of Mr. Collins as applied in Heller challenges to the indictment. I'm a little bit confused on the Heller point because Heller indicated that those who had been committed and those who were mentally ill, that there was not going to be an extension of Second Amendment rights to such persons, and that was obviously necessary to get the deciding fifth vote in Heller, because without those, it had been a lot written on this, but without those reservations, it's doubtful they would have been able to assemble a majority, and Heller says that mental illness and the rest are outside the scope of the Second Amendment, and the legislature could still prohibit such persons who are presumptively dangerous from possessing firearms. So I'm just not sure that Heller tore that kind of a hole in the ability of legislatures to prescribe the possession of firearms for people who are as dangerous. And this is a classic case of somebody who's dangerous. As Judge Irene Berger found, she didn't upwardly depart for no reason at all. She had a very thorough hearing. She's very familiar with it, and it seems to me that it falls within the scope of what Congress could regulate. And in fact, they're president of the circuit that has upheld the constitutionality of Section 922G4. We've said that that's constitutional, and Heller said that that's constitutional, so I don't understand the Second Amendment argument. The Second Amendment argument beyond Heller relates to the application of 922G4 as to Mr. Collins in light of the circumstances of his commitment, which I would argue differentiate the circumstances of his classification as someone who's been committed to a mental institution. To put that in, I think Judge Berger had the same view of this, that a lot of what you're trying to do is to collaterally attack, in this case, the West Virginia commitment order. And there are an awful lot of cases in the Supreme Court which said you don't go about attacking a state court order collaterally in this fashion. And much of the evidence you wanted to put on was introduced for the purpose of undermining the West Virginia commitment order. And there are forums that you can do that in, mainly West Virginia forums, but this isn't the proper venue for rehashing the commitment order, is it? I don't see it as rehashing, Your Honor. I see it as challenging whether the commitment order is a valid predicate to be able to charge Mr. Collins under 922G4. It has always been Mr. Collins' position that he challenged the commitment order at the time that he was ordered to be temporarily committed, and that he was actually returned to state court to address not only the underlying prosecution, but also the habeas petition he had filed challenging his commitment, and that at the conclusion of that hearing, the district court entered an order. He was not deemed to be involuntarily committed any further. The criminal charges against him were not pursued. And the salient fact that I think distinguishes Mr. Collins' circumstance from that in the Crowley and in the Midget case that's cited by the government that is this court's precedent, is that there was a specific finding by the state court that the habeas and the criminal prosecution would be dismissed. The problem is we're not in a commitment proceeding. And a lot of the evidence that you were introduced and that you complained that the district court rejected, it made me think, well, wait a minute. We're not in West Virginia court, and we're not in a commitment proceeding. Yes, and that's Mr. Collins' point exactly, that there was not a sufficient commitment order for him to be barred under 922G4. That when he came back to state court having challenged his commitment, the whole matter was dismissed with a finding that it was being dismissed in a way that, quote, promotes the interests of justice and protects the rights of the defendant. And he was never advised that he was prohibited or that he should not possess firearms. The state did not, not only did they not alert him of that, they did not tell Nick about that. Excuse me, he's charged with knowledge of the law. Well, we would argue that under Rahaf, he's charged, the government is charged with proving that he knew not only that he had been committed, but that that commitment meant that he could not lawfully possess firearms. Oh, I don't think, Paul, I think that he's charged that he needs to know his status. He does not need to know that his status is a violative of the law. You know, it's an old axiom that ignorance of the law is no excuse. The government has to prove knowledge of his status. It does not have to prove that he knew that his status violated the law against this kind of possession of firearms. Counsel, are you familiar with our recent case? Yes, Your Honor. Yes, in fact, I cited to Gary in the government's reply to us on page 7. Well, if you are going to make a rave argument, then you should be talking about them. And are you familiar with Medley? I am not familiar with that one, Your Honor. But I'm also familiar with the Second Circuit's decision involved, which is the 2019 Post-Rave case. Well, Medley is a 2020 case. Oh, Medley, Medley, I'm sorry, I did not hear you properly. Yes, Medley, I am aware of Medley. Yes, I misheard you. Even with respect to Gary, Your Honor. I'm not talking about Medley, because I think it's the closest to this case. I'm sorry, I didn't hear you. I think Medley is the closest Circuit precedent to this case. And if you want us to file a rave error now, you have to square it with Medley. Well, from Mr. Collins' perspective, there is plain error. Because under a haste, he is entitled to present a defense as to his knowledge of his prohibiting status. That is his position with respect to this appeal. Ms. Morgan, this is Judge King. He was committed, what, by the Raleigh County Circuit Court to the Sharp Hospital? He was temporarily placed there, yes, to be restored to competency. He was there for three or four months? Yes, sir. Okay. And that forum that he signed and said he had never been committed, the answer is no. Correct, correct. And the question was on that count one, whether he knew he'd been committed for mental reasons to the hospital. Yes, yes. And he lied on the form. And that's a crime against the United States, correct? I understand that that is the jury verdict. That's not a Heller issue. I understand that the jury verdict in that regard is binding. His position doesn't then indicate that he did have knowledge of the offense. No. And so undermine his, well, the jury found he did, he lied. But the jury did not hear the evidence that he intended to present under Rahaf, which was that he did not lie because it was his understanding of his commitment that it was not a preclusive commitment under 922-G4. Wait a minute. You have a circumstance here. In addition, the count one has a men's way of knowingly making a false statement. And he knowingly made a false statement in the jury's view about his prior commitment. And the obvious import of the jury's verdict was that he knew about his prior commitment, and he outright lied about it. And so there's no, it's hard for you to make a Rahaf argument or any kind of argument, frankly, on, given the fact that there were two counts in this case, and count one speaks directly to the question of knowledge of status. My response to that, Your Honor, is that his defense has been from the outset of the case that when he marked that box, he believed that he was not prohibited and that he was not making a materially false statement. But the jury did not hear the evidence that he intended to offer but was precluded from offering, which was that he did not believe he had been committed to a mental institution in such a fashion that it precluded his lawful possession of firearms and that, therefore, his statement on the farm was not true. I know he had a squabble with his federal public defender down in southern West Virginia, and that's how you ended up in the case. You said you had to take it over, and I admire you for this, but did his disagreement with the public defender have anything to do with his wanting to run his own case rather than listen to his lawyer? No, I believe his public defender wanted to be able to make these arguments below and presented them and preserved them for the record. But the district court's rulings were that despite rehafe, he would not be permitted to offer a defense about his understanding of the import of his temporary commitment and the state court's subsequent order dismissing the state prosecution and his habeas, indicating that his rights were being protected thereby. And this is all in plain error of view, is that right? Yes, Your Honor, it is. Your Honor, I had asked for my time to be broken 15 and 5, and I see I'm over that, so I believe at this time it's appropriate for me to... You've reserved some time for rebuttal, and we'd be happy to hear from you on rebuttal. And in the meantime, let's hear from the government on this. Thank you, Your Honor. May it please the court, Ms. Morgan. My name is Alex Hamner, and I'm representing the United States in this matter. I was originally going to address the Heller argument. However, I believe that's been pushed aside for the moment. I'm going to jump right into the rehafe and Medley arguments in this case. I believe that Medley is the most relevant precedent on this matter right now. And quite frankly, I think that Collin's case is distinguishable from Medley for a few reasons. First, unlike Medley, the indictment here did put him on notice that he would have to defend against whether he knew he had been committed to a mental institution. As this court is aware... On another count, to be sure. To be sure, Your Honor, yes. While we did track the statutory language on the 922G4 charge, Medley effectively has determined that that is insufficient. Regardless, the other count, count one, does effectively put the defendant on notice of the fact that he was going to have to defend against his knowledge of his prohibited... not his prohibited status, but his status as somebody who has been committed to a mental institution. So I do believe it's distinguishable from Medley in that regard. Additionally, unlike Medley, the jury instructions here similarly gave the jury the opportunity to determine that he knew of his status as being somebody who had been committed to a mental institution. So the evidence that was presented at trial was directly on this issue in regards to the 18 U.S.C. 922A6 charge. The jury was presented with the evidence that he had actually been committed to a mental institution for eight months. That he had stood in court and was ordered by the judge to be committed to a mental institution. While he was in that mental institution... I'm sorry, after he had been released from that mental institution, he filed a lawsuit about that commitment. Wherein he tried to sue Sharp Mental Hospital for forcing him to take medication... Did he represent himself in that one? He did, Your Honor. That's what I was thinking. I had some... I got something wrong here. I was questioning Ms. Morgan. He was first represented by a public defender, Mr. Bungard. And that's the one that he assaulted and beat up, right? Yes, Your Honor. And then he was represented at the trial by Mr. Campbell? Yes, Your Honor. So Ms. Morgan is his third lawyer? Yes, Your Honor. She came in at the appellate level. I commend her for taking the case on. It's obviously a difficult situation. But Mr. Campbell tried the case? Yes, Your Honor. That's correct. And you tried the case? I was second chair on the case, yes, Your Honor. Okay. Okay. Thank you, Your Honor. His lawsuit again... I have two questions to help me out here. So after Medley, what do we do when we talk about... Do we use Elano or not? I believe that Medley did use Elano and referred to it several times. I recognize the dissent in that case. Judge Quattlebaum disagreed somewhat with... Well, I mean, that was the purpose of his dissent, his disagreement with Elano. I think that the holding in Elano is that notice. Lack of notice equals prejudice. Okay? And that wouldn't be the same kind of analysis that you'd have in Bolano. To be sure, the majority sided with Elano. And I just wondered what we're to do going forward. So do you think that... Well, give me your views on this. Well, Your Honor, in this case... I do think Elano still applies. I do think even after Medley, I think that Elano is still relevant precedent that the Supreme Court has set forward. And until they change that, I believe it is still... Elano didn't make exceptions for certain type of claims, did it? It didn't say, well, plain error doesn't apply and this, this, and this. It may apply if there's an absence of counsel or something. But my understanding of Elano was that the plain error standard was one that was going to apply across the board. Is that your understanding? That is, Your Honor. And I did not see any language in Elano that limited it to anything less than that. But Medley, holding in Medley seems to be in some tension with that, as the majority acknowledged, right? Yes. So, assuming that Medley is now such a precedent, whatever you or Mr. Wilkinson or I just came to think about the plain error standard, do you still prevail? Yes, Your Honor, because even with the Medley standard as it is, our case here is distinctive, is rather distinctive. As I've already outlined somewhat and as I will continue to outline, Medley... Well, here you have count one, which with a mens rea of knowingly. And so the presence of count one, which speaks to a prior commitment and the fact that a knowingly false statement was made about something he knew about, was a prior commitment, count one establishes definitively that he knew of his prior commitment and lied about it. Correct, Your Honor. And as a result, I believe that Medley set out several ways in which the government could still have prevailed, and we fall into those categories. Specifically, that the jury was still instructed on the issues that the court is pointing out, and that the evidence that was presented in this case overwhelmingly proved that he knew of his status as being someone who had been committed to a mental institution. As evidenced by the jury's verdict, but also this court, if it were to review it, would find similarly because of the evidence that was presented to the trial. Yes, Your Honor. I know it's difficult, maybe difficult to hear. You've got all the evidence that you point to that he knew of his commitment, and that had to be introduced with respect to count one. But what I think conclusively helps you, even more so than the mountain of evidence that he knew of his committed status, is the fact that the jury bought your argument. And the jury's verdict, in as clear a fashion as is possible, indicated he knew of his prior commitment, and he just lied about it on the ATE form. That's an unusual circumstance. It's not present in a whole lot of things. You don't get that kind of conclusive result. It's not just the evidence. It's the jury's verdict. Yes, Your Honor. I completely agree, and I think that's, again, largely what distinguishes this from Medley. In Medley, he had been charged with several other indictments. He had been found not guilty on all of those. Sorry, several other counts. He had been found not guilty on those. He had only been found guilty on the 922-G1 count. Here, we have two separate counts on which he was found guilty of both. And the missing element that's established in Raheis and supported by Medley of his knowledge of his status as somebody who's been committed to a mental institution was conclusively found by the jury in its conviction on count one. That he knew of, when he filled out the form for the ATF form to purchase the firearm, he knew that he'd been committed, and he knew that it was a false statement that he was putting on there that he had not been committed. You know, there are a lot of different Supreme Court precedents, and Raheis is certainly one of them, but Heller is another important precedent. And one thing that Heller makes clear is that you can still have firearms regulation of somebody who has been committed to a mental institution. And so there's an ultimate danger here of taking something that Heller says can be regulated and overturning the jury's verdict in such a fashion that it permits a very dangerous individual to carry lethal firearms. And that is what is at stake in count two, and you have to sort of look at these two in prior materia. And as George Berger found, and she detailed it, this is a very dangerous person. The statements that he's made indicate an imbalance of a serious sort. His actions, assaulting his own attorney, indicate a serious inability to control destructive impulses. And you put firearms in possession, you put a person like that in possession of firearms, you're asking for another tragic incident. And I think Judge Berger recognized the danger there and looked at the criminal history, and she looked at the total lack of remorse for the things that he had done. She looked at the threats to harm and to kill others, and in my personal view, I think she did an excellent job with this case. And I think that it is exactly what count two and count one taken in conjunction. It's exactly what should have been done. And I just can't believe this. The West Virginia court found that he was psychotic and committed him, and part of this proceeding is trying to attack that commitment order collaterally. And I don't, you know, I think that states deserve more respect than that. I wholeheartedly, I'm sorry, go ahead. Go ahead, what were you going to say? I wholeheartedly agree, and I believe that the attempt to attack this case under Heller is inappropriate, specifically because the Heller court determined that these types of restrictions are presumptively lawful and permissible. And so to say otherwise, I find it difficult to believe that there's anybody who wants to put firearms in the hands of the mentally ill or the deranged, because those are specifically the types of people that lead to mass shootings and are statistically more likely to attack and harm other individuals. And it's just inconsistent logically to try to arm them when they've been specifically precluded from that historically, even going back to the ratification of the Second Amendment as outlined in my brief. But furthermore, in regards to this commitment that he received to a mental institution, I believe that Midget is directly on point on this issue. While I recognize that there are different ways to have somebody committed to a mental institution, the definition is outlined by the ATF as the code does not specifically have one. This type of commitment falls within that definition, but again, referring back to Midget, Midget was almost directly on point in that Midget was examined by a competent mental health practitioner. He was represented by counsel at that time. Factual findings were made by a judge who heard evidence. The conclusion was reached by the judge that Midget suffered from mental illness to such a degree that he was in need of inpatient hospital care. A judicial order was issued committing Midget to a mental institution and he was actually confined there. And each one of those very points that the court made in Midget apply here with Mr. Collins. He was examined by a friend and psychiatrist. He was represented by counsel. Factual findings were made by a preponderance of the evidence by a judge who heard the evidence. The circuit court concluded that Collins suffered from mental illness to such a degree that he was in need of inpatient hospital care. And a judicial order was issued committing him to a mental institution. And then he was actually confined there for a period of eight months. So, to say that that doesn't qualify as being committed to a mental institution under 922G4 is inconsistent with this court's precedent and inconsistent with the plain language and plain reading of the statute. And again, as the court has pointed out so far, the time for Mr. Collins to have attacked that would have been prior to his attempt to purchase a firearm. Lewis v. United States specifically outlines that the time to challenge any collateral issues is well before trying to obtain a firearm. Mr. Collins could have attempted to restore his right to possess a firearm through any of the programs that West Virginia offers, such as the NICS Improvement Amendment Act that was passed by Congress in 2008, and the West Virginia Code Section 61-7A-5, which provides a process by which an individual can regain his right to possess firearms due to mental health disabilities. So, he did nothing in an effort to try to attempt to restore his rights to possess a firearm prior to filling out the form. And even his assertion that he didn't know he was prohibited is inconsistent with the form itself because it specifically has a large warning across the top. And again, this was presented to the jury that says that the questions on this form are going to help determine whether you are prohibited from possessing a firearm. And on that same page, down a few lines, it specifically asks if you have been determined by court to be a mental defective or if you've been committed to a mental institution. And he said no. So, it's difficult to argue, and again, I appreciate Ms. Morgan's taking this case and the difficulties she's had with it as a result of it. But it's difficult to argue that he did not know that he had been committed to a mental institution. And even if we were to extend Rahab, which the government did not concede for a moment that we should, that he should have known he was actually prohibited, he did know that he was prohibited, and the evidence is unconservative, quite frankly, overwhelming in that regard. Judge Monk, do you have anything to add? It's overwhelming, and it's uncontradicted. It is uncontradicted, and again, that's something that's different from Medley. I believe the court in Medley determined that the defendant may not have contradicted, or he stipulated, to the fact that he was a prohibited person because he didn't know that he should have contested it. That's not the case here. The defendant, Mr. Collins, knew that he needed to defend against the fact that he had been committed to a mental institution, aware of that, because of count one, and he did not contest that whatsoever. In fact, when he took the stand, he admitted to it. So, there has been no evidence to negate his knowledge of his commitment to a mental institution, and it was overwhelming that he knew of it. All right. Thank you, counsel. I think your time has expired, and unless my colleagues have some questions for you, I would like to hear the rebuttal argument. Thank you, Your Honor. All right. Ms. Morgan, would you like to offer some comments in rebuttal? I would, Your Honor. I appreciate the opportunity to do so. With respect to Medley, I do not view Medley as distinguishable from the circumstances involving Mr. Collins with respect to the defendant's knowledge. If Mr. Collins had been afforded the opportunity at trial to offer the defense which he intended, it would have been a defense to count one and count two that his statement on the form that he had not been committed to a mental institution and his testimony that he did not believe he was a prohibited person would arise from the circumstances underpinning his temporary commitment to Sharp Hospital and the fact that when he was returned to state court... How do you deal with the fact that the defendant on the stand admitted he knew his status? He knew that he had been committed, but his testimony would have been that he did not believe that that temporary commitment was a prohibitor under 922G4 or a prohibitor for applying to obtain a firearm, which he was able to do. All right. But that goes to... That's an ignorance of the law question. I understand the court's position there, but he would argue that in light of Rahafe, that Rahafe... No, I mean, Rahafe doesn't challenge that point. Rahafe cuts against you in that sense because it requires only knowledge of status. It does not require that, additionally, that the individual knew that that status violated the law. And, you know, he's up on the stand saying, of course I knew I've been committed. You know, it's perfectly consistent with Rahafe, and I think that we've been over all of this pretty carefully, but I just want to say that I don't see that Rahafe sort of carved out an exception to the time-honored rule that ignorance of the law is no excuse. All it did is spoke to knowledge of status. Those are very different things. I understand the court's position, and it was Mr. Collins' position on appeal that that issue is an unresolved issue of law in the Fourth Circuit, and that Rahafe stood for more than what I hear you saying that it stands for and that he should have been able to present a defense in that regard. If I may correct one other – it's a very minor error, but I'm really cognizant of wanting to make sure that the record is accurate. There were some questions by Judge King earlier regarding representation by Mr. Collins' prior counsel and the fact that I would be his third lawyer. I'm actually the second lawyer on appeal, so I'm actually the fourth lawyer. I don't think that affects at all the outcome of the case, but I just wanted to make sure that the record was accurate and that I was bringing forth that additional fact for the court's consideration. Well, what it does do is – it's what both of my colleagues have alluded to, and that is that you've acted very admirably in taking this case on, and I think we respect that a great deal. And as Judge King indicated, it was a very difficult situation with very difficult circumstances, and I think we all appreciate your stepping forward because it's a service to us as well as to your client that you've done so. Thank you. I appreciate that very much. I totally agree with that, but before you sit down, can you just tell me one more time what your client thinks he was entitled to rather than the notice that he was convicted? What was it that he thinks doesn't fulfill the requirements of rape? He thinks that in addition to being given notice, that he should have been given the opportunity to mount the defense that he did not have the requisite knowledge. And we've been over his testimony, what his testimony would have been in that regard, but he would have intended to argue not only that he was entitled to notice of the government's obligation to introduce evidence of his knowledge, but also the opportunity to rebut that. And his errors are that he wanted to be able to rebut that and was foreclosed from doing so because of the court's holding that it was an improper collateral effect on the underlying state proceedings. He wanted to rebut it by doing what? Because he didn't have a jury finding. Well, his argument, he began to raise these rape-related arguments prior to the trial. And he wanted to argue and his counsel proffered to the court that he should be permitted to take the stand and argue that he was not a prohibited person under 922G4 and that he did not believe that he was and therefore lacked the requisite knowledge of his prohibited status. Except when he took the stand, as I understand it, he admitted he knew that he had been committed. Right. He admitted the fact of the commitment. But he maintained at that time and continues to maintain, and if he was part of this call, he would vehemently continue to maintain that despite the fact that he was temporarily committed for a competency determination, that he was never informed and never has been informed that that temporary commitment precluded his lawful possession of firearms and that he therefore should not have been charged under 922G4. And that there was nothing for him to collaterally attack because he believed that he was not committed in a fashion, committed to a mental institution in a fashion that would preclude him from lawfully possessing firearms under federal law. Well, you run into midget at some point and that's a problem for you. Yes, but I answered to fill it out because I was not understanding what his argument was. So I appreciate that and join you, both of you, in thanking counsel for her fine argument on behalf of, in this difficult case. Absolutely. Thank you very much, Ms. Morgan. Appreciate it. Thank you all very much. All right. I'll ask the courtroom deputy to adjourn court and get back in touch with us for a conference promptly. Okay. Very good. Thank you, Your Honor. Thank you, Your Honor. This honorable court stands adjourned until this afternoon. God save the United States and this honorable court.
judges: J. Harvie Wilkinson III, Diana Gribbon Motz, Robert B. King